# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE  DIVISION

Warren, et al                                                  Civil Action No. 16-00514

versus                                                         Judge Robert G. James

Hancock Mortgage Corp., et al              Magistrate Judge Carol B. Whitehurst

## Report and Recommendation

Before the Court is an unopposed[1] Motion To Dismiss Plaintiffs, Gregory Parnell Warren and Deborah Lynn Warren's Complaint, pursuant to Federal Rule of Civil Procedure Rules 12(b)(6) and 8(d), filed by Defendants, Hancock Mortgage Corporation, Federal National Mortgage Association ("Fannie Mae") in its corporate capacity and in its alleged capacity as Trustee for Securitized Trust Fannie Mae Remic Trust 2003-32("2003-32 Trust")  and Whitney Bank. [Rec. Doc. 12].

## *I. Factual Background*

 On March 31, 2003, Plaintiffs executed a Note and Mortgage with Hancock Mortgage Company ("Hancock Bank") for $200,000.00 relating to the property located at 206 Archangel Drive, Lafayette, Louisiana 70508. *R. 12-2, Promissory Note; R. 12-3, Mortgage*. The Note was subsequently endorsed in blank, rendering it "bearer paper" as defined by La. R.S. § 10:3–109 and enabling negotiation by

---

[1] Pursuant to Local Rule L.R. 7.5W, the deadline for filing any opposition to Defendants' Motion To Dismiss was August  23, 2016.

transfer of possession.

Plaintiffs allege that Hancock Bank sold the Note that allowed their loan to be converted into a security. *R. 1, Compl., ¶¶ 22, 30.* Securitizing the mortgage required transferring the note to Fannie Mae, which Plaintiffs allege was acting as trustee for the 2003-32 Trust. *Id., ¶ 31.* Plaintiffs' allege their mortgage would then be packaged with other mortgages and shares would be sold to investors. *Id. ¶¶ 18, 20.* According to Plaintiffs, this process required several transfers and assignments before a particular date. *Id. ¶¶ 32-33, 35-36.* They allege that these transfers did not happen properly, and that Fannie Mae, therefore, did not hold or own the promissory note or have a right to enforce the mortgage. *Id. ¶¶ 35-36, 40-43.* Plaintiffs also claim that during the securitization process, the promissory note and the underlying mortgage were separated, making them unenforceable. *Id., ¶¶ 44–45, 50.* They allege that, because of these deficiencies, none of the Defendants (whose precise role in the securitization process is not explained in the complaint) can enforce the mortgage against them. *Id. ¶ 51.* The only individual who has standing to foreclose, according to Plaintiffs, "is the holder of the note because they have a beneficial interest." *Id. ¶ 59.* They identify these individuals as "the certificate holders of the securitized trust." *Id.* Based on these allegations, Plaintiffs brought claims for  lack of standing to foreclose, fraud in the concealment, fraud in the inducement, intentional infliction of

emotional distress, quiet title, slander of title, declaratory relief, violations of the Truth in Lending Act ("TILA"), violations of the Real Estate Settlement Procedures Act ("RESPA"), violations of HOEPA, and recission. *Id.* ¶¶ *28–47.*

In their complaint, Plaintiffs also identify several issues with substance of the note and mortgage. They allege that the terms of the promissory note and mortgage were not properly disclosed by Hancock Bank, that the terms were unclear, inconsistent, and illegal, and that Hancock wrongfully qualified the Plaintiffs for a loan that they could not afford. *Id.* ¶¶ 52-54. They further claim that all of the Defendants "neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants." *Id.* ¶ 55. Based on these allegations, Plaintiffs brought claims for fraudulent concealment, fraud in the inducement, violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., and violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*.

## II. Procedural Background

On September 19, 2014, due to Plaintiffs' default on their loan, Hancock Bank filed a *Petition to Enforce Security Interest by Executory Process* ("foreclosure suit") in the Fifteenth Judicial District Court ("15th JDC"), Parish of Lafayette, Louisiana. *R. 12-4.* Hancock Bank filed the Note and Mortgage into the record as an exhibit to

the Petition. *Id.* On September 29, 2014, a Writ of Seizure was issued, directing the local Sheriff to seize and sell the property. That action remains pending under Docket Number 2014-4798.

Defendants represent that since initiation of the foreclosure suit, Plaintiffs have filed for bankruptcy protection three times: (1) December 8, 2014—4:14-bk-51525 (dismissed April 24, 2014 for failure to make plan payments); (2) August 4, 2014—4:15-bk-50971 (dismissed for failure to make plan payments); and, (3) March 23, 2016—4:16-bk-50411 (dismissed for failure to file required information). Hancock Bank is listed as a secured creditor in each of the bankruptcy cases. Each was initiated no more than two (2) days before a duly scheduled auction of the subject property. Each was canceled subject to the bankruptcy court's stay order.

Additionally, on February 2, 2016, Plaintiffs filed a *Petition for Injunction* in the foreclosure suit, *R. 12-6*, which was denied for failure to set forth any grounds for injunctive relief, *R. 12-7*. Defendants further represent that a foreclosure sale was scheduled for March 23, 2016. On April 19, 2016, while the most recent bankruptcy action was pending, Plaintiffs filed the instant action and Hancock Bank dismissed the foreclosure sale scheduled for July 6, 2016. Also on April 19, 2016, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"), Motion for Preliminary Injunction and a Motion to Proceed *in forma pauperis*. *R. 1, 2, 3*. The motion for TRO

4

and Preliminary Injunction as well as the motion to proceed *informa pauperis* were denied. *R. 5, 6.*

### III. Legal Standards

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing Fed.R.Civ.P. 8). Rule 8(d) provides that, in general, "each allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(d). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Twombly,* 550 U.S. at 555. Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal,* 556 U.S. at 678. When the complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." *McManaway v. KBR, Inc*., 906 F.Supp.2d 654, 660 (S.D.Tex. Dec. 4, 2012).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for

5

which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Thus, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992). Put differently, the complaint "must describe the who, what, when, where, and how of the fraud." "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d

719, 724 (5th Cir.2003). The jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## IV. Analysis

### A. Hancock Bank, Fannie Mae and Whitney Bank

Plaintiffs' Complaint lists eleven separate claims against all Defendants: (1) lack of standing to foreclose; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) quiet title; (6) slander of title; (7) declaratory relief; (8) violations of the Truth in Lending Act ("TILA"); (9) violations of the Real Estate Settlement Procedures Act ("RESPA"); (10) violations of the Homeowner Equity and Protection Act ("HOEPA"); and (11) rescission.[2] Because many of Plaintiffs' claims—Counts 1, 3, 4, 5, 6, 7, and 11—depend at least in part on which party (if any) has standing to foreclose on Plaintiffs' mortgage, the Court will address that issue first. The remaining claims will be addressed in turn.

---

[2] The thirty-one page Complaint appears to to be a commercially available form which Plaintiffs filled-in and signed *pro se. See Goode v. PennyMac Loan Services, LLC*, N.D.Ill., 1:14-cv-1900; *Bobbitt v. Countrywide Bank,* FSB, M.D.Fla.. The Complaint makes numerous historical and technical allegations, groups all defendants together and raises the aforesaid issues. What it lacks, however, are facts specific to Plaintiffs' mortgage or the foreclosure proceedings they seek to prevent with the filing of this case.

*1. Standing To Foreclose*

The central allegation of Plaintiffs' complaint is that no Defendant has a "lawful ownership or a security interest" in Plaintiffs' home. *R. 1, Compl. ¶¶ 13, 27–52*. They claim that their mortgage loan was securitized shortly after it was executed. *Id. ¶ 28*. The securitization process required several transfers between various parties, ultimately culminating in a transfer to Fannie Mae, acting as trustee for the TRUST 2003–32 Trust. *Id. ¶¶ 28–30*. Plaintiffs allege that the transfers were not properly performed and are therefore void. *Id. ¶¶ 31–40.* They further allege that in the process of these transfers, their mortgage and promissory note were split up, allegedly making them unenforceable. *Id. ¶ 46*. Because the transfer to Fannie Mae was invalid and the split note and mortgage could not be enforced, Plaintiffs conclude that Fannie Mae, which they claim identified itself (though they provide no factual context for this allegation) as the "holder and owner" of the note and beneficiary of the mortgage, does not own the mortgage or have standing to foreclose. *Id. ¶¶ 36–52.* They further conclude that the only party who can foreclose on the mortgage is the "holder of the note;" they identify "the holder of the note" as the "certificate holders of the securitized trust." *Id. ¶ 55*.

Plaintiffs' complaint also alleges that Whitney Bank was the "Master Servicer" for the securitized trust run by Fannie Mae. *Id, ¶ 6.* Plaintiffs do not attach to the

8

complaint a copy of the purported assignment to Whitney Bank as "Master Servicer," nor do they allege the method by which they searched for and where they located any such assignment. Defendants, however, attached to their Motion public record exhibits related to Whitney Bank.[3] Those documents provide that Hancock Bank merged with Whitney Bank in 2014 and changed its name to "Whitney Bank." These documents suggest that the presence of "Whitney Bank" in this matter may be soley because of the 2014 merger. These merger documents, as well as the absence of any explanation as to how Plaintiffs came to the legal conclusion that there was an assignment to Whitney Bank, render their allegation that this transfer occurred implausible. Regardless of this implausiblity, the Court will include Whitney Bank in the analysis below.

In the affidavit of Michael Carrigan, attached to Plaintiffs' complaint, Carrigan asserts that "While Fannie Mae does claim ownership of the loan on its web site," "[t]he loan was not identified in any publically reporting trust." Carrigan then opines, because "a qualifying trust [] was formed shortly after the execution of the loan on

---

[3] In determining whether to grant a Federal Rule 12(b)(6) motion, the court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Court may also, however, "take judicial notice of documents in the public record ..., and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005).

March 31, 2013, [] the Fannie Mae Remic Trust 2003-32 with a settlement date of April 31, 2003," Plaintiffs' loan was securitized as Trust 2003-32 of which Fannie Mae is the trustee of *R. 1, Exh. A, Carrigan Aff. ¶ 7*. Thus, Carrigan's conclusion that Plaintiffs' mortgage was a securitized loan was without any supporting evidence.

Plaintiffs' allegations are not sufficient to raise their claim for relief beyond the speculative level. Particularly when viewed in conjunction with the other deficiencies in Plaintiffs' complaint, the conclusory statements that Hancock Bank and Whitney Bank were involved with the Fannie Mae trust that is then linked vaguely to the Plaintiffs' loan does not constitute "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Based on a common-sense reading of Plaintiffs' complaint and the documents referenced therein that are central to Plaintiffs' claims, the Court concludes that Plaintiffs' allegations surrounding Fannie Mae and Whitney Bank's involvement, the assignment of the Plaintiffs' mortgage to a trust, and the securitization process are implausible.

This conclusion bears on several counts in Plaintiffs' complaint. In Count 1, Plaintiffs brings a claim for "wrongful foreclosure," in which they claim that no Defendant has the right to foreclose on the mortgaged property. *R. 1, Compl. ¶¶ 53–57.* As a preliminary matter, this Count fails to state a claim against Fannie Mae

or Whitney Bank because Plaintiffs have put forth no factual allegations whatsoever that these defendants have taken any action to foreclose. Although Plaintiffs make no *specific* allegation that Hancock Bank wrongfully foreclosed their mortgage, the underlying foreclosure complaint demonstrates that Hancock Bank instituted foreclosure proceedings. *See R. 12-6, Foreclosure Petition*. In their claim for wrongful foreclosure, Plaintiffs claim that no Defendant has standing to foreclose because the loan was not properly securitized, and that "Defendants... are estopped and precluded from asserting any secured or unsecured claim in this case." *Id.* ¶¶ *32–41, 56–57*. They claim that "the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest." *Id.* ¶ *55*. They go on to identify the holders as the "certificate holders of the securitized trust." *Id.* As discussed above, however, Plaintiffs' allegations that the mortgage was transferred to Fannie Mae and placed in trust to be securitized are implausible. The documents before the Court show that Hancock Bank was in possession of the note, indorsed in blank, and an assignee of the mortgage. *R. 12-2, 12-3, 12-4*. Hancock Bank had standing to enforce the mortgage as a holder of the note. *See Id.* ¶ *55* ("[T]he only individual who has standing to foreclose is the holder of the note."). Plaintiffs' claim of wrongful foreclosure therefore fails to state a claim against all Defendants.

In Count 3 of the complaint, Plaintiffs allege fraud in the inducement. *Id.* ¶¶

*75–82.* They claim, in part, that Defendants fraudulently foreclosed on Plaintiffs' mortgage by misrepresenting that they were the holder and owner of the note and the beneficiary of the mortgage. *Id.* ¶ *77.* Again, there are no factual allegations that Fannie Mae or Whitney Bank took any action to foreclose or represented that they were the holder and owner of the note or beneficiary of the mortgage. This Count, therefore, fails to state a claim against those Defendants. Count 3 also fails to state a claim against Hancock Bank. Count 3 alleges that Defendants fraudulently misrepresented that they were the holder and owner of the note and had standing to foreclose. As discussed above, Plaintiffs' allegations that the loan was transferred to Fannie Mae and securitized are implausible, and the documents before the Court demonstrate that Hancock Bank held the note indorsed in blank. Plaintiffs' allegations that Hancock Bank misrepresented itself as holder of the note do not plausibly state a claim. To the extent that the fraud-in-the-inducement count relies on standing to foreclose, it should be dismissed.

In Count 4, Plaintiffs allege intentional infliction of emotional distress caused when Defendants "fraudulently attempt[ed] to foreclose." *Compl.* ¶¶ 83–93. Even assuming that instituting foreclosure proceedings could ever qualify as the extreme and outrageous behavior required for intentional infliction of emotional distress, for the reasons discussed above, Plaintiffs do not state a plausible claim that Hancock

Bank's attempt to foreclose was fraudulent. Again, there are no factual allegations suggesting that Fannie Mae or Whitney Bank made any attempt to foreclose. The claim for intentional infliction of emotional distress against all Defendants should therefore be dismissed.

In Counts 5 and 6, Plaintiffs bring claims for slander of title and quiet title, which, again, are based on Plaintiffs' allegations that no party was the holder and owner of the note or beneficiary of the mortgage. *Id. ¶¶ 94–109*. As stated above, Hancock Bank owned the note, indorsed in blank. The quiet title and slander of title counts therefore fail to state a claim.

Finally, Plaintiffs asserted a claim for declaratory relief, seeking a declaration that Defendants do not have authority to foreclose upon the property. *Id. ¶¶ 110–121*. For the same reasons, this count fails to state a claim and should be dismissed.

### 2. *Fraud Claims*

In Counts 2 and 3 of their complaint, Plaintiffs allege that Defendants engaged in two types of fraud: fraudulent concealment (Count 2) and fraud in the inducement (Count 3). In their fraudulent concealment claim, Plaintiffs allege that Defendants committed fraud by concealing that the mortgage loan would be securitized. *Id. ¶¶ 66–74*. They claim that securitization had "a materially negative effect on Plaintiff"

13

and that "Defendant knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans." *Id.* ¶¶ *67–68*. In their fraud-in-the-inducement claim, Plaintiffs focus primarily on Defendants' standing to foreclose, which the Court has addressed above. *See supra* § IV.A.1. In the allegations that can be construed to avoid the standing-to-foreclose issue, Plaintiffs claim that Defendants failed to disclose the "material terms" of the loan transaction with the intent to cause Plaintiffs to "rely on the misrepresentation."*Id.* ¶¶ *79–80*. This was allegedly done for "the purpose of initiating the securitization process." *Id.* ¶ 79.

Defendants assert that Plaintiffs have failed to state a claim under the heightened pleading standard required for fraud claims under Federal Rule of Civil Procedure 9(b). *R. 12-1, p.9.*  The Court agrees. Under Rule 9(b), a plaintiff alleging fraud must "state *with particularity* the circumstances constituting the fraud." Fed.R.Civ.P. 9(b) (emphasis added). "At a minimum, Rule  9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992). Plaintiffs fail to allege any of the required elements for either fraud claim.

Plaintiffs do not identify *who* made misrepresentations about the securitization process in either claim. In their fraudulent-concealment claim, Plaintiffs make a

14

blanket allegation that "Defendants" concealed the fact that the loans were to be securitized. *Id*. ¶ *67*. Nothing in the complaint identifies which of the Defendant(s) misrepresented the nature of their mortgage loan. The fraud-in-the-inducement claim similarly refers only to "Defendants" without specifying *who* made the offending misrepresentation. *Id*. ¶¶ *76–77*. Hancock Bank was the original mortgage lender and allegedly entered into the Pooling and Servicing Agreement ("PSA") that initiated the securitization process. *Id*. ¶¶ *20, 27, 48-49*. Plaintiffs make no factual allegations that Fannie Mae or Whitney Bank were even present when the loan was originated, let alone that they made misrepresentations or concealed material information that induced Plaintiffs to enter into the loan. For both fraud claims, Plaintiffs also fail to allege *when* these misrepresentations were made or *how* the misrepresentations were communicated to them.

Plaintiffs' description of the *content* of the misrepresentations is also insufficient. The fraud-in-the-inducement claim says only that Defendants "fail[ed] to disclose the material terms of the transaction."*Id*. ¶ *78*. They do not identify what the material terms were or which terms were concealed. In describing the misrepresentations in their fraudulent concealment claim, Plaintiffs allege that "Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements." *Id*. ¶ *67*. According to Plaintiffs, this included

concealing financial incentives paid, the existence of Credit Enhancement Agreements, and the existence of Acquisition Provisions." *Id.* Even if these undefined terms could provide enough particular factual information to give Defendants sufficient notice of the nature of the claims against them, the allegations fail to plead a required element of Plaintiffs' claim: a duty to disclose. Under Louisiana law, a fraudulent concealment claim requires, "there first must be a duty to speak" or disclose. *Greene v. Gulf Coast Bank*, 593 So.2d 630 (La.1992).[4] This typically requires a fiduciary or confidential relationship between the parties or a situation in which the defendant is in a position of influence and superiority over the plaintiff. *Id.* at 632. Plaintiffs have not alleged (either expressly or impliedly) any fiduciary or confidential relationship between themselves and Hancock Bank, Fannie Mae, or Whitney Bank, nor have they put forth any other reason that Defendants had a duty to disclose to them that their loan would be securitized. Because Plaintiffs' fraudulent concealment claim fails to plead all required elements and both fraud claims fall dramatically short of the particularity requirement of Rule 9(b), Counts 2 and 3 should be dismissed.

### 3. TILA And HOEPA Claim

In Counts 8 and 9, Plaintiffs allege that all Defendants violated TILA and

---

[4] The Louisiana Supreme Court recently reiterated, "the refusal to speak, in the face of an obligation to do so, is ... fraudulent." *Lomont v. Myer–Bennett*, 172 So.3d 620, 629 (La. 2015).

HOEPA "by failing to provide Plaintiffs with accurate material disclosures required under TILA/HOEPA."[5] *R. 1, Compl. ¶ 124.* "Because HOEPA is a part of TILA, it is subject to the same terms and definitions. Thus, any transaction that is not a 'consumer credit transaction' as defined by TILA falls outside the scope of HOEPA as well." *Billings v. Propel Financial Services, L.L.C.*, 821 F.3d 608, 610 (5th Cir. 2016) (citing 15 U.S.C. §§ 1602, 1639). Accordingly, the Court will address these claims together.

Under TILA, a lender in a commercial credit transaction is required to disclose certain terms and conditions of the transaction to a borrower prior to consummating the loan. *Edwards v. Your Credit Inc.*, 148 F.3d 427, 432 (5th Cir.1998).  Assignees of the original lender are only liable "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). A violation is "apparent" if it is "(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." *Id*. A servicer of consumer loans "shall not be treated as an assignee of such obligation ... unless the servicer is or was the owner of the

---

[5] "Because HOEPA is a part of TILA, it is subject to the same terms and definitions. Thus, any transaction that is not a 'consumer credit transaction' as defined by TILA falls outside the scope of HOEPA as well." *Billings v. Propel Financial Services, L.L.C.*, 821 F.3d 608, 610 (5th Cir. 2016) (citing 15 U.S.C. §§ 1602, 1639).

obligation." 15 U.S.C. § 1641(f)(1).

Plaintiffs fail to state a claim under TILA against Hancock Bank, Fannie Mae, or Whitney Bank. Although a plaintiff's factual allegations are accepted as true in the motion to dismiss stage, "[t]o survive a Rule 12(b)(6) motion... a plaintiff must allege more than conclusory allegations or legal conclusions masquerading as factual conclusions." *Hamad v. Center for Jewish Community Studies*, 265 Fed.Appx. 414, 416, (5th Cir. 2008) (citing *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir.1993)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right of relief above the speculative level." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The factual allegations in Plaintiffs' TILA claim are unacceptably sparse. In their TILA claim, Plaintiffs allege only that:

> Defendants violated TILA/HOEPA by failing to provide Plaintiff with accurate material disclosures required under TILA/HOEPA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

*R. 1, Compl. ¶ 124.* The only other statement in the complaint that could plausibly support the alleged TILA violation says that Defendants "neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants." *Id. ¶ 51.* Plaintiffs do not provide any factual matter whatsoever describing what disclosures were given before consummating the loan, who made such disclosures, and how the disclosures were deficient.

Moreover, Plaintiffs make no attempt to plead facts showing that Hancock Bank, Fannie Mae or Whitney Bank are subject to liability.  Plaintiffs do not plead any facts suggesting that the TILA violation was "apparent on the face of the disclosure statement." Plaintiffs  do not come close to alleging " sufficient factual matter to state a claim to relief that is  plausible on its face." *Frame v. City of Arlington*, 657 F.3d 215, 222 (5th Cir.2011) (en banc). Plaintiffs' broad, conclusory allegations are not sufficient to give Defendants notice of the claims against them, and accordingly, their TILA/HOEPA claim should be dismissed.

### 4. RESPA Claim

Plaintiffs also bring a claim against all Defendants for violations of RESPA. *R. 1, Compl. ¶¶ 132-138.* RESPA prohibits, among other things, the payment or receipt of "any portion, split, or percentage of any charge made or received for the

rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). "Settlement services" include "the origination of a federally related mortgage loan." 12 U.S.C. § 2602(3). Plaintiffs' precise allegations in their RESPA claim are not immediately clear. After setting out language from a United States Department of Housing and Urban Development policy document about appropriate fees to mortgage brokers, Plaintiffs claim that Defendants received "interest and income" that is disproportionate to Plaintiffs's "situation." *Id. ¶¶ 134-136*. They also claim that no "separate fee agreements" were provided, and that "payments between the Defendants were misleading and designed to create a windfall." *Id. ¶¶ 136-137*. Read generously, the complaint seems to allege that Defendants received improper fees related to the settlement of Plaintiffs' loan.

Even under this generous interpretation, Plaintiffs again fail to state a claim against Hancock Bank, Fannie Mae, and/or Whitney Bank. Even if they had put forth any facts suggesting that Hancock Bank, Whitney Bank or Fannie Mae participated in the loan settlement, Plaintiffs have not alleged what (if any) fees were paid or received by these Defendants. Nor have they alleged how or why these fees (if there were any) were for services not rendered or otherwise ran afoul of RESPA. Instead, they inscrutably claim that the "interest and income that Defendants have gained is

disproportionate to the situation Plaintiffs find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiffs suffer financially." *Id.* ¶ *135*. Plaintiffs do not even make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, much less factual allegations that would plausibly state a claim for relief. Plaintiffs' RESPA claim should be dismissed.

### 5. *Claim for Rescission*

In their complaint, Plaintiffs seek rescission of their mortgage loan. *Id.*¶¶ *139-143*. Plaintiffs allege seven independent grounds for rescission: (1) TILA; (2) failure to provide a mortgage loan origination agreement; (3) fraudulent concealment; (4) fraud in the inducement; (5) failure to abide by the PSA; (6) making illegal or fraudulent transfers of the note and Mortgage/Deed of Trust; and (7) public policy grounds. *Id.* ¶ *140.* As discussed above, the TILA and fraud claims are dismissed. Any rescission claim based upon those grounds should therefore also be dismissed.

 Failure to abide by the PSA is also not an appropriate ground for rescission. Plaintiffs as the borrowers, were not parties to the PSA, and courts have generally held that third parties do not have standing to enforce the terms of a PSA. *See, e.g., In re Correia*, 452 B.R. 319, 324–25 (B.A.P. 1st Cir.2011); *In re Walker*, 466 B.R. 271, 282 (Bankr.E.D.Pa.2012); *In re Washington*, 468 B.R. 846, 852

(Bankr.W.D.Mo.2011); *In re Smoak*, 461 B.R. 510, 519 (Bankr.S.D.Ohio 2011); *In re Edwards*, 2011 WL 6754073, at *4 (Bankr.E.D.Wis. Dec.23, 2011); *In re Almeida*, 417 B.R. 140, 149 (Bankr.D.Mass.2009).

It is not clear whether the second basis for rescission, failure to provide a mortgage loan origination agreement, is based on another claim in Plaintiffs' complaint or is wholly independent. Because origination agreements often concern the relationship between a borrower and a mortgage broker, Plaintiffs' failure to provide a mortgage loan origination agreement could plausibly be related to Plaintiffs' RESPA claim. *See, e.g.*, *Nat. Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 159 (D.D.C. 2011). Because RESPA prohibits fees between the lender and the mortgage broker for services not actually performed, failure to provide an origination agreement could potentially be related to improper settlement fees. *See* 12 U.S.C. § 2607(b). If this basis for rescission is based upon Plaintiffs' now-dismissed RESPA claim, the rescission claim should also dismissed. Instead, if this second bases for rescission is somehow independent of the previous claims, the claim should be dismissed because there are no factual allegations supporting relief on this basis.

The remaining ground for rescission, public policy, is also so devoid of factual material that it cannot possibly state a claim on which relief can be granted. Plaintiffs

make no attempt to articulate how a failure to rescind their mortgage loan would be contrary to public policy. Because all stated grounds for rescission fail, the claim for rescission should be dismissed in its entirety.

### V. Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' motion to dismiss be granted as Plaintiffs have failed to state a claim against Defendants and the claims against Hancock Bank, Bank of America and Fannie Mae be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)© and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th  Cir.1996).

THUS DONE AND SIGNED in Lafayette, Louisiana on the 6th day of October,

2016.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**